UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DON'SHON RONALD ALBERT
STREET,

        Plaintiff,

v.

BERRIEN COUNTY JAIL,
RUSSELL SIMMONS, and
PAUL BAILEY,

        Defendants.
_____/

Case No. 1:22-cv-356

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by plaintiff Don'Shon Ronald Albert Street ("Street"). While Street is currently a prisoner in the custody of the Michigan Department of Corrections (MDOC), the matters alleged in this lawsuit occurred at the Berrien County Jail ("Jail"). On initial screening, the Court dismissed all defendants except for Chaplain Russell Simonson (named in the complaint as "Russell Simmons"). This matter is now before the Court on defendant Simonson's combined motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) (ECF No. 17). The motion is unopposed.

    **I.**    **Street's complaint**

The Court construed Street's complaint as brought pursuant to 42 U.S.C. § 1983 and summarized the allegations as follows:

> In Plaintiff's complaint, he states that he is a Sunni Muslim. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that on February 7, 2022, he spoke with

1

Defendant Simmons "about obtaining a Holy Qu'ran and the upcoming month of Ramadan." (*Id*.) Plaintiff also requested "to be placed on a no pork meal based on [his] religion." (*Id*.) In response, Defendant Simmons advised Plaintiff that he did not "pass out Qu'rans[,] only Bibles." (*Id*.) Plaintiff also contends that Defendant Simmons stated, "Ramadan is not a[] verified tradition so there's nothing to be done," and "[n]ot eating pork is not going to stop you from going to hell." (*Id*.) Plaintiff states that he finds these statements to be offensive. (*Id*.) Plaintiff "grieved this matter to the shift commander, jail administrator[,] and also the sheriff, Sheriff Bailey," however, Plaintiff did not receive a response. (*Id*.)

Plaintiff "was placed on a no meat diet but [was] still given pork based products," which Plaintiff "had to trash." (*Id*.) Further, during the month of Ramadan, Plaintiff "was forced to save all of [his] meals throughout the day to eat at the proper time which subjected [him] to having all [of his] saved meals thrown away by deputies stating it was against rules and regulations to save food." (*Id*.) Plaintiff alleges that he has lost 30 pounds "due to [his] meals [being] thrown away during the month of Ramadan and food [he] couldn't eat due to the risk of defiling [his] body and going against dietary laws of [his] religion." (*Id*.) Plaintiff contends that "[t]hese violations are caused by Sheriff Bailey, Chaplain Russell Simmons and the Berrien Co[unty] Jail Rules and Regulations Handbook for Personal Problems and Meals for Special Diets." (*Id*.)

Plaintiff does not identify the specific constitutional rights that Defendants infringed; however, the allegations in his complaint against the named Defendants implicate the protections of the First Amendment. As relief, Plaintiff seeks compensatory damages and "attorney fees," as well as injunctive relief. (*Id*., PageID.4.)

Opinion (ECF No. 6, PageID.20-21).

## II. Chaplain Simonson's combined motion to dismiss and for summary judgment

### A. Legal standard

Chaplain Simonson has filed a combined motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). The Court will construe this motion as one brought for summary judgment.[1] Chaplain Simonson seeks summary

---

[1] The Court notes that such combined, alternative motions are disfavored. Unless carefully briefed, such combined motions conflate the issues by asking the Court to apply both the legal standard for a motion to dismiss (considering only the facts alleged in the complaint) and the legal standard for a motion for summary judgment (considering additional facts presented by the movant). Here, Chaplain Simonson submitted exhibits outside of the pleadings. *See* ECF Nos. 17-4 and 17-5.

judgment because (1) Street did not exhaust his claim, and (2) Chaplain Simonson is not a state actor subject to liability under § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Street did not file a response in opposition to the motion for summary judgment.[2] "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B. Lack of Exhaustion

### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

---

[2] W.D. Mich. LCivR 7.2(c) states that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

**2.     Discussion**

Failure to exhaust prisoner grievances is an affirmative defense that must be raised by the defendant. *Id*. at 216.   Here, the Jail has a grievance system which allows an inmate to "discuss" personal problems and to file written grievances for "special complaints":

**11. PERSONAL PROBLEMS:**

> You may discuss your problems with a deputy or with the jail chaplain. Any other questions or problems may be addressed by writing the shift commander, who will assign a deputy to investigate your complaint or question.
>
> **Grievances**: Special complaints regarding deputies' actions or grievances regarding disciplinary actions can be addressed by writing the jail operations lieutenant, jail administrator, undersheriff or sheriff. Action will be taken depending on the situation and circumstances of the grievance.

Berrien County Jail Inmate Rules and Regulations (Inmate Rules) (ECF No. 17-5, PageID.77).

Chaplain Simonson has not met his burden to establish lack of exhaustion.   The written grievance provision in § 11 relates only to "[s]pecial complaints regarding deputies' actions or grievances regarding disciplinary actions."  Street's complaint against Chaplain Simonson does not fit either of these descriptions.  In this regard, Chaplain Simonson's Affidavit (ECF No. 17-4) does not address his interaction with Street or the issue of exhaustion.  Accordingly, Chaplain Simonson's motion for summary judgment should be denied with respect to lack of exhaustion.

5

### C. Chaplain Simonson's status as a state actor

Street seeks relief against Chaplain Simonson pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Court addressed Street's constitutional claim as follows:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id*. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). Additionally, "the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (alteration in original) (citations omitted).
>
> Here, although Plaintiff has by no means proven that Defendant Simmons's actions violated Plaintiff's First Amendment rights, the Court concludes that Plaintiff's claims against Defendant Simmons may not be dismissed on initial review.

Opinion at PageID.26.

In his motion, Chaplain Simonson states that he is not a state actor for purposes of § 1983. At the time of the alleged incident, Simonson was employed by Forgotten Man Ministries. Simonson Aff. at PageID.71. The Chaplain is considered a state actor for purposes of § 1983 only if his conduct that allegedly violated Street's constitutional rights "may be 'fairly attributable to the State.'" *Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), the Supreme Court set forth a two-part test for determining whether a private party's actions are attributable to the state.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Lugar*, 457 U.S. at 937. In applying this test, "*Lugar* requires 'something more' than mere action pursuant to governmental authority." *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992). "Whether 'something more' exists, which would convert a private party into a state actor, varies with the circumstances of the case." *Id*.

Here, there is no evidence that "something more" existed which converted Chaplain Simonson into a state actor. Chaplain Simonson points out that Street has not cited any law or regulation imposing a duty on Simonson "to outfit [him] with a Quran or non-pork meals." Simonson Brief (ECF No. 17, PageID.52). As discussed, Chaplain Simonson was employed by Forgotten Man Ministries. In his affidavit, Simonson further stated that:

> 3. Through my employment I worked as a chaplain, offering Christian religious services and counseling to inmates at the Berrien County Jail.

7

  4. I was compensated for the chaplain services I performed at the Berrien County Jail exclusively through Forgotten Man Ministries.

  5. At no time during my employment with Forgotten Man Ministries did I receive or accept compensation of any kind from any governmental agency, including Berrien County or Berrien County Jail.

  6. I did not perform chaplain duties at the jail pursuant to any formal contract or agreement with any entity other than my employer, Forgotten Man Ministries.

  7. I did not report to anyone at the jail.

  8. I did not have any duties or responsibilities at the jail on behalf of the jail.

  9. Christian material, when purchased for an inmate, was purchased with private donations or was itself a private donation.

*Id*. at PageID.71-72.

Based on this record, there is no evidence that Chaplain Simonson's limited activity at the Jail converted him into a state actor subject to § 1983. Accordingly, Chaplain Simonson's motion for summary judgment should be granted on this basis.

### III. Recommendation

For these reasons, I respectfully recommend that defendant Chaplain Simonson's motion for summary judgment (ECF No. 17) be **GRANTED** and that this case be **terminated**.

Dated: January 11, 2024      /s/ Ray Kent
                 RAY KENT
                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).